**Peter M. GATLIN, Petitioner–Appellant,**

v.

**M.K. MADDING, Warden; Attorney General of the State of California; People of the State of California, Respondents–Appellees.**

No. 98–56249.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1999.

Filed Aug. 25, 1999.

Cara DeVito, Berley & DeVito, Woodland Hills, California, for the petitioner-appellant.

Michael C. Keller, Deputy Attorney General, Los Angeles, California, for the respondents-appellees.

Before: BRUNETTI, RYMER, and SILVERMAN, Circuit Judges.

RYMER, Circuit Judge:

California state prisoner Peter M. Gatlin appeals the district court's order dismissing without prejudice for failure to exhaust his 28 U.S.C. § 2254 petition for writ of habeas corpus pursuant to a certificate of appealability (COA) issued by a motions panel of this court. After briefing had been completed, the state moved to dismiss on the ground that we lack subject matter jurisdiction to decide the certified issue because exhaustion is a statutory requirement, not a constitutional issue as required under 28 U.S.C. § 2253(c)(2). We disagree that our subject matter jurisdiction is implicated whenever the state asserts that a COA issued by judges of this court has been improvidently granted. Instead, we hold that objections to a request for a COA in this court must be made within thirty-five days of the notice of appeal or motion for COA, as provided by 9th Cir. R. 22–1(c). Because the state did not resist the COA within thirty-five days of Gatlin's filing of his notice of appeal (which our rules treat as a request for COA) on the basis now asserted, we decline to consider its belated challenge. As we agree with the district court on the merits, we affirm.

I

Following a jury trial in 1994, Gatlin was found guilty of six counts of second degree robbery and one count of kidnaping. The jury further found true all allegations of Gatlin's weapon use and prior convictions. Gatlin was sentenced to a term of 25 years. He appealed to the California Court of Appeal, arguing (among other things) that the trial court should have excluded two witnesses's lineup and in-court identifications of him

because they were tainted by a prior impermissibly suggestive identification procedure. Specifically, he claimed that the lineup and in-court identifications by Jan Murray, a victim of one of the robberies and the kidnaping, and Chung Sim, another victim of one of the robberies, were tainted by their earlier viewing of Gatlin in jail clothes and handcuffs in municipal court. The taint from that procedure, he maintained, was sufficient to create a substantial likelihood of misidentification and, as a result, the procedure violated due process. The court of appeal modified the judgment by deleting the one-year enhancement to count six and changing the total term of imprisonment to 24 years, but otherwise affirmed.

Acting pro se, Gatlin then petitioned for review to the California Supreme Court. In his petition, he argued that "the trial court should have excluded Jan Murray and Chung Sim's live line-up and in-court identification of appellant." The substance of his argument was presented as follows:

> This Honorable Court should grant review of this issue on the grounds that the base term for petitioner is the kidnapping charge of Jan Murray. Prior to the incident on December 2, 1993, victim Janet Murray could not identify petitioner. She stated that she only glimpsed a person she did not recognize. Also that the glimpse did not influence her lineup or in-court identification of Gatlin.

> Yet she was unable to pick petitioner out of a six pack photographic lineup prior to the December 2, 1993, incident. Immediately thereafter, she could easily identify petitioner as the person who robbed her.

> There can be no doubt that this incident of December 2, 1993, had a great deal of effect on the outcome of the trial and sentences of petitioner in the instant case. Therefore, this Honorable Court must remain [sic] for retrial without the tainted line-up information. Petitioner incorporate's [sic] herein the arguments raised by his appellate counsel on Direct Appeal on this issue.

Gatlin further stated in his conclusion that "[t]he cumulative errors discussed in this Petition For Review in Argument I through V herein denied petitioner his State as well as Federal Constitutional rights to a fair trial." Gatlin's petition for review was denied.

After that, Gatlin filed a petition for writ of habeas corpus in federal district court claiming that Jan Murray's tainted lineup and in-court identifications violated due process. The case was referred to a magistrate judge, who recommended that the petition be denied and dismissed without prejudice. He concluded that Gatlin had failed to exhaust his claim that the identification procedure violated due process because he did not present his federal constitutional theory to the California Supreme Court. Although Gatlin had attempted to raise his due process claim in his petition for review to that court through incorporating by reference his argument to the California Court of Appeal, the magistrate judge found that this was inadequate because Rule 28 of the California Rules of Court provides that a petition for review may not incorporate by reference portions of other documents.

The district court adopted the magistrate judge's report and recommendation and ordered that judgment be entered denying and dismissing the petition without prejudice. After judgment was entered, Gatlin timely filed a notice of appeal. He also sought a certificate of appealability from the district court. The district court denied the COA, but this court treated the notice of appeal as a request for a COA and granted it with respect to the following issue:

> Whether appellant has failed to exhaust his claim that one victim's live line-up and in-court identifications were tainted by a prior impermissibly suggestive identification and therefore violated due process, where appellant presented the claim to the state's highest court by

incorporating it by reference to arguments made on direct appeal.

After the certified issue had been fully briefed and the case calendared, the state filed a motion to dismiss the appeal, arguing that this court lacks jurisdiction to decide the issue.

## II

We must first decide whether we have jurisdiction to hear this appeal. The state submits that Gatlin's appeal is not properly before us because a COA is a jurisdictional prerequisite, and Gatlin has not satisfied § 2253's threshold requirement of showing the violation of a constitutional right[1] because the rule of exhaustion, embodied in 28 U.S.C. § 2254, is a statutory requirement based on principles of comity. Since issues regarding exhaustion do not arise out of the constitution, the state contends that we cannot proceed because the COA should not have been issued and jurisdiction is therefore lacking.

Gatlin counters that the COA delineates the denial of a constitutional right because it refers to a denial of due process. He also argues that the "substantial showing" of a denial of that right is satisfied by the claim that "one victim's live lineup and in-court identifications were tainted by a prior impermissibly suggestive identification." In any event, he contends, a COA was issued and the matter is fully briefed, so we should not rescrutinize the COA.

■ There is no doubt that issuance of a certificate of appealability is a jurisdictional prerequisite to appeal. *See, e.g., Gerlaugh v. Stewart,* 167 F.3d 1222, 1223 (9th Cir.1999) ("An appeal may not be taken unless the applicant has made a substantial showing of the denial of a constitutional right and a certificate of appealability is granted."). That much is clear from the face of the statute. However, a COA was issued by this court in this case. Therefore, the question is whether we may go forward with the appeal based on a COA that was arguably granted improvidently. We have never previously considered this question. Nor, so far as we can tell, have we ever raised such a question sua sponte, as we would be obliged to do if a correctly issued certificate were truly jurisdictional. Only the Seventh and Tenth Circuits have considered a similar conundrum, concluding in *Young v. United States,* 124 F.3d 794, 798–99 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2324, 141 L.Ed.2d 698 (1998), and *United States v. Talk,* 158 F.3d 1064, 1068 (10th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1079, 143 L.Ed.2d 81 (1999), that an erroneously issued COA (in each case, by the district court) in a federal habeas proceeding is different from the absence of one and thus does not disable the court of appeals from proceeding to the merits once the briefs have been written.[2]

---

1. As amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2253(c) states:
   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
   (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
   (B) the final order in a proceeding under section 2255.
   (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
   (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

2. Judge Easterbrook reasoned as follows in *Young:*
   The certificate is a screening device, helping to conserve judicial (and prosecutorial) resources. The obligation to identify a specific issue concentrates the parties' attention (and screens out weak issues); the limitation to constitutional claims also reduces the number of appeals while simultaneously removing a category of claim that ... has poor prospects. Once a certificate has issued, however, the case proceeds to briefing and decision; the resources have been invested. It is too late to narrow the issues or screen out weak claims. Perhaps a mo-

■ We see no reason to part company with either circuit in this particular case. Our rules allow for a response to a request for a COA (or to a notice of appeal, which we treat as the same thing) within thirty-five days:

> If the district court denies a certificate of appealability as to all issues, petitioner may, within thirty-five days of the district court's entry of its order denying a certificate of appealability, file in the court of appeals a motion for a certificate of appealability along with a statement of reasons why a certificate should issue as to any issue(s). If no motion for a certificate of appealability is filed, the court of appeals will deem the notice of appeal to constitute a request for a certificate of appealability. In either case, the respondent may file a response within thirty-five days of the notice of appeal or motion, whichever is later.

9th Cir. R. 22–1(c). Here the state let that period slide by, making no objection to the propriety of issuing a COA. Instead, the state waited until after briefing and calendaring to ask us to second-guess the motions panel (through which requests for COAs are processed) on whether the unopposed COA was properly issued on the basis of a constitutional claim. We decline to do so. While Congress clearly intended for the COA mechanism to filter out insubstantial appeals, we have provided a mechanism for input into that decision. Given a ready procedure for response by the state to requests for COAs in this court, it would be counter-productive to require merits panels to reconsider every one that is issued.

■ Effectively this puts the state on the same footing as a petitioner, for we expect a petitioner who wants a broader certification than allowed by a district court to file a separate motion before a motions panel in our court within thirty-five days of the district court's entry of its order. Petitioners must do this *before* they can ask a merits panel to broaden the scope of the appeal beyond that allowed by a motions panel. *See* 9th Cir. R. 22–1(d) & advisory committee's note.

■ We express no view on whether an issue having to do with exhaustion should be certified (either by a district court or this court). Nor do we mean to foreclose a challenge to the propriety of a COA issued by a district court-which is not the posture of the case before us-or in timely response to a petitioner's request in this court. We simply hold that once a COA has been issued without objection by this court, the procedural threshold for appellate jurisdiction has been passed and we need not revisit the validity of the certificate in order to reach the merits.

### III

■ Turning to the merits, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To satisfy this requirement, a petitioner must "fairly present" the substance of his claim to the state court. *See Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). It is not sufficient to raise only the facts supporting the claim; rather, "the constitutional claim ... inherent in those facts" must be brought to the attention of the state court. *See id.* at 277, 92 S.Ct. 509.

tion to dismiss an appeal on the ground that a certificate was improperly issued would serve some function. But once the briefs have been written and the case heard, there is little point in scrutinizing the certificate of appealability. An obligation to determine whether a certificate should have been issued, even if the parties do not present this issue for decision-a step entailed by the conclusion that a proper certificate is a jurisdictional requirement-would increase the complexity of appeals in collateral attacks and the judicial effort required to resolve them, the opposite of the legislative plan.
*Young,* 124 F.3d at 799.

Neither is the exhaustion requirement satisfied by the mere circumstance that the "due process ramifications" of an argument might be "self-evident." *See Anderson v. Harless,* 459 U.S. 4, 7, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). Instead, "a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." *Gray v. Netherland,* 518 U.S. 152, 162–63, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry,* 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam).

■■■ To exhaust a habeas claim properly, a petitioner must present his claim to the state supreme court even if that court's review is discretionary. *See O'Sullivan v. Boerckel,* — U.S. ——, 119 S.Ct. 1728, 1732–33, 144 L.Ed.2d 1 (1999). Because California's "established, normal appellate review procedure is a two-tiered system," *id.,* Gatlin was required to exhaust his habeas claims in a petition for review to the California Supreme Court. *See* Cal. R. of Ct. 28(b) (describing procedure for seeking review of a decision of the court of appeal).

■■■ Gatlin's petition for review to the California Supreme Court did not "fairly present" his due process identification claim. While Gatlin adequately described the factual basis for his claim, he nowhere identified the federal legal basis for his claim. The statement in the conclusion of his petition that the "cumulative errors discussed in this Petition For Review in Argument I through V herein denied petitioner his State as well as Federal Constitutional rights to a fair trial," is insufficient. "[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to

a state court." *Gray,* 518 U.S. at 163, 116 S.Ct. 2074.

■■■ Gatlin argues that under California Rule of Court 28(e)(2), which provides that "[t]he statement of an issue will be deemed to comprise every subsidiary issue fairly included in it," he raised his due process claim by asserting the factual basis for it. However, the statement of issues required by Rule 28(e)(2) is meant to "define[ ] the scope of the issues to be considered on the merits if review is granted." Cal. R. of Ct. 28, advisory committee comment. To read this subsection as Gatlin urges (to permit a petitioner to raise any legal argument potentially comprised in a factual description of a claim) would be to undermine the clear intent of the Rule to limit review to those issues specifically identified in the petition. Moreover, such a reading would conflict with California Rule of Court 28(e)(5), which requires that "[a]ll contentions in support of the petition shall be included, including all legal authorities and argument."

■■■ Gatlin also notes that his petition for review incorporated by reference the due process arguments raised in his brief to the California Court of Appeal. However, California Rule of Court 28 expressly prohibits the incorporation by reference of authorities or argument from another document. *See* Cal. R. of Ct. 28(e)(5). That Rule 28 is "only a Supreme Court rule" which the court is not required to enforce, or that it might irregularly enforce, is of no import. While the consistency of a state court's enforcement of its procedural rules is relevant in determining whether a petitioner has procedurally defaulted his claim, *see Forrest v. Vasquez,* 75 F.3d 562, 564 (9th Cir.1996), it is irrelevant in this context, which pertains to the distinct question whether Gatlin has exhausted his state court remedies. *See Brown v. Maass,* 11 F.3d 914, 914 (9th Cir.1993) (per curiam) (distinguishing between exhaustion and procedural default). In any event, Rule 28 clearly militated against

reviewing the arguments raised in support of the identification issue before the court of appeal and, as a result, we may not rely on them in evaluating whether Gatlin has exhausted his state court remedies. *See Kellotat v. Cupp*, 719 F.2d 1027, 1031 (9th Cir.1983) (concluding that the presentation of an issue in a petition to the Oregon Supreme Court was inadequate because the court's policies militated against reviewing the issue).

■■■■■ Regardless, Gatlin maintains that in this particular case, the California Supreme Court violated Rule 28 and actually did consider the arguments he incorporated by reference. In support, he points to the California Supreme Court's summary denial of a habeas petition filed in that court after his notice of appeal was filed in this case. However, we decline to consider either the petition or the ruling because neither document was before the district court. *See* Fed. R.App. P. 10(a)(1); *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1078 (9th Cir.1988) (refusing to consider papers that were not filed with the district court, or considered by it when it entered the order challenged on appeal). In addition, we decline to take judicial notice of the fact that after his notice of appeal was filed, Gatlin filed, and the California Supreme Court denied, a state habeas petition in order to determine whether state remedies are currently available to Gatlin. "The appropriate time to assess whether a prisoner has exhausted his state remedies is when the federal habeas petition is filed, not when it comes on for a hearing in the district court or court of appeals." *Brown*, 11 F.3d at 915. Whether Gatlin currently has state remedies available to him may be raised when and if Gatlin files another habeas petition in the district court.[3]

■■■■■ Finally, Gatlin argues that the district court should have ignored his fail-

ure to exhaust and addressed the merits of his claim, and should have liberally construed his pro se pleadings. Both contentions are incorrect. While the district court could have ignored Gatlin's failure to exhaust and reached the merits of his petition, *see* 28 U.S.C. § 2254(b)(2), it was not required to do so. Nor was the district court obliged to construe Gatlin's papers liberally merely because he was proceeding pro se in the California Supreme Court. *See Rose v. Lundy*, 455 U.S. 509, 520, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (exhaustion requirement applies equally to pro se litigants because "[j]ust as pro se petitioners have managed to use the federal habeas machinery, so too should they be able to master this straightforward exhaustion requirement").

**AFFIRMED.**

---

**3.** Likewise, questions concerning whether Gatlin's petition would be barred by AEDPA's one-year statute of limitations, *see 28 U.S.C. § 2244(d)*, and whether his due process iden-

tification claim would be procedurally defaulted, are to be decided by the district court in the event Gatlin files another petition.