**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Frank NAJJOR, Defendant–Appellant.**

**Nos. 98–50748, 99–50476.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 2000

Filed July 2, 2001

Terry R. Kolkey, San Marcos, California, for the appellant.

Peter A. Frandsen, Trial Attorney, U.S. Department of Justice, San Diego, California, for the appellee.

Before: GOODWIN, HUG, and PREGERSON, Circuit Judges.

HUG, Circuit Judge:

Frank Najjor appeals his conviction and sentence for two counts of bank fraud in violation of 18 U.S.C. § 1344 and 18 U.S.C. § 2. The district court sentenced Najjor to thirty-three months in custody and ordered Najjor to pay restitution to Home Federal Savings and Loan ("Home Federal") and Torrey Pines Bank ("Torrey Pines"). On appeal, Najjor contends that Count One of the indictment was barred by the statute of limitations. Najjor also

argues that the district court erroneously calculated the loss to Home Federal in determining his sentence and failed to properly consider all the evidence before making its restitution order. The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

## BACKGROUND

Najjor, a distributor of dairy products, sought to build a cold storage building in the Mira Mesa area of San Diego. The building was to be used for the long-term storage of dairy products and ice cream in commercial quantities. In order to purchase the land and construct the cold storage building, Najjor formed the Miramar Mall Limited Partnership ("Partnership") and assumed the role of general partner.

In 1985, Najjor borrowed $4 million from Torrey Pines for the acquisition, development, and construction of the cold storage project. The Partnership then developed the property and constructed the cold storage facility. In 1986, Najjor applied for a $5.4 million commercial loan with Home Federal. In order to secure the loan, Home Federal required Najjor to obtain an independent appraisal of the property. Because the Miramar Mall property was unique and difficult to evaluate from a commercial lending perspective, the independent appraiser relied heavily on the property's potential earnings from leases submitted by Najjor. The submitted leases showed that the Miramar Mall facility was almost fully leased to commercial tenants for five-year terms. In fact, the leases provided by Najjor were falsified. The appraiser valued the property based on these false leases.

Najjor then submitted the independent appraisal and signed leases to a Home Federal loan officer as part of the loan application process. The loan officer re-

lied heavily on the false leases and the appraisal based on the false leases in recommending approval of the loan. On December 2, 1986, the Home Federal lending committee approved the loan. On December 11, 1986, Najjor signed documents in connection with the loan and the $5.4 million note payable to Home Federal. The loan was funded on December 17, 1986.

Najjor used $4 million to pay off the Torrey Pines construction loan and approximately $400,000 was used for expenses and to pay off other loans. Najjor also received $705,082 in cash from Home Federal. As part of the Home Federal loan agreement, a $300,000 collateral pledge was held in a savings account at Home Federal. On December 23, 1988, Home Federal released the $300,000 collateral pledge account to Najjor.

In 1987, Najjor applied to Torrey Pines for a $500,000 line of credit to improve the cold storage facility. Najjor also submitted to Torrey Pines a list of tenants and rental payments indicating that the leases at the cold storage property were for five-year terms. Relying on the leases and an income statement prepared by Najjor, the Torrey Pines lending committee approved the loan. Najjor then signed a line of credit note payable to Torrey Pines for $500,000.

Najjor made interest-only monthly payments of about $50,000 on the Home Federal loan until about December 1988. He extended the due date of the Torrey Pines loan. By late 1988, Najjor began separating himself from the Miramar Mall Partnership. He settled litigation with a partner by turning over substantial interests in both businesses to that partner. Najjor ultimately sold the Miramar Mall property and set up another freezer facility a few miles away. Najjor drew tenants from Miramar Mall to the new property. The new owners of the Miramar Mall property

were unable to make payments because of the reduced cash flow. Home Federal loaned $155,000 to the new owners to pay property taxes on the property. Ultimately, the loans went into default as the property was over-appraised and under-leased. In the end, the new owners placed the property in bankruptcy.

On June 20, 1991, Home Federal purchased the property back at a trustee's sale for a $3.5 million non-cash lender-bid. In 1993, Home Federal sold the property for $3.96 million. Torrey Pines was unable to collect any of the money borrowed by Najjor. In December 1988, the outstanding balance on the Torrey Pines loan was $396,911.

A federal grand jury returned a three-count indictment against Najjor charging him with bank fraud pursuant to 18 U.S.C. § 1344, and aiding and abetting pursuant to 18 U.S.C. § 2. Count One charged Najjor with executing a scheme to defraud Home Federal. Count Two charged Najjor with executing a scheme to defraud Torrey Pines. Count Three charged Najjor with executing a scheme to defraud another company, Mutual Investment. Count Three is not at issue in this appeal.

Najjor filed a motion to dismiss Count One of the indictment alleging that the ten-year statute of limitations under 18 U.S.C. § 3293 had run. The district court denied the motion to dismiss.

A jury trial commenced on May 19, 1998 and continued for ten days. The jury convicted Najjor of Counts One and Two but found him not guilty of Count Three. The district court held a sentencing hearing on November 9, 1998 and sentenced Najjor to thirty-three months in custody as to each count to run concurrently after which Najjor was to remain on supervised release for three years. The district court also ordered restitution in the amount of $2.19 million to the successor of Home

Federal and restitution of $396,911 to the successor of Torrey Pines.

At the sentencing hearing, Najjor asked to be heard further on the restitution matter and the district court agreed to hold a second sentencing hearing. However, on November 12, 1998, the district court entered a judgment based upon the sentence announced on November 9, 1998 from which Najjor timely appealed. Because a notice of appeal had been filed with this court, Najjor moved for limited remand to hold his case in abeyance pending resolution of the restitution issue at the second sentencing hearing. This court denied the motion.

On June 21, 1999, the district court held the second sentencing hearing. The district court denied Najjor's motion to modify his sentence and affirmed the judgment entered on November 12, 1998. Najjor filed a second notice of appeal. This court consolidated the two appeals.

On appeal, Najjor contends: (1) Count One was time-barred by the ten-year statute of limitations because the indictment was returned more than ten years after completion of the offense; (2) the district court erred in calculating the amount of restitution payable to Home Federal because it failed to consider evidence of payments and receipts by Home Federal; and (3) the district court incorrectly calculated the amount of loss to Home Federal for sentencing purposes as the full amount of the $5.4 million loan because the bank recovered a substantial amount of the sum loaned.

## ANALYSIS

A.  District Court's Jurisdiction to Enter Second Sentencing Order

As an initial matter, the government argues that the district court did not have jurisdiction to enter the second sentencing

order at the June 21, 1999 hearing because Najjor had already filed a notice of appeal of the judgment entered November 12, 1998.

At the November 9, 1998 sentencing hearing, Najjor's counsel argued that the method used to determine the restitution amount was flawed. The court indicated its willingness to hear Najjor's argument on the restitution matter but stated that time constraints would require the matter to be heard at a later date. The court then stated that the judgment would stand as it was and the court would modify the judgment if necessary after a second sentencing hearing. The court scheduled a subsequent hearing which it held on June 21, 1999.

It is undisputed that Najjor timely filed his first notice of appeal after the entry of the November 12, 1998 judgment. Najjor did not file a motion to modify or reconsider the sentence pursuant to Federal Rule of Criminal Procedure 35(c), which would have extended the time for filing a notice of appeal until the order disposing of the motion was entered. *See United States v. Barragan–Mendoza*, 174 F.3d 1024, 1026 (9th Cir.1999). Najjor could have then appealed from the order granting or denying his motion to modify the sentence.

■ The judgment entered November 12, 1998 was a final judgment and the filing of the notice of appeal conferred jurisdiction on the court of appeals and divested the district court of its control over those aspects of the case involved in the appeal. *See United States v. Ortega–Lopez*, 988 F.2d 70, 72 (9th Cir.1993). Thus, although the district court believed it retained jurisdiction to reconsider the restitution issue, the filing of the notice of appeal of the November 12, 1998 judgment divested the district court of jurisdiction to enter its June 21, 1999 sentencing order. Accordingly, we lack jurisdiction over the second appeal and will consider only the

issues presented in Najjor's appeal of the November 12, 1998 judgment.

**B. Statute of Limitations**

Najjor argues that Count One of the indictment, charging him with defrauding a bank in violation of 18 U.S.C. § 1344, was barred by the statute of limitations. Specifically, he maintains that all acts constituting the crime of bank fraud were committed prior to December 2, 1986, when the loan was approved. The district court concluded that the signing of the note payable to Home Federal by Najjor, which occurred on December 11, 1986, was in furtherance of the bank fraud scheme, and thus Count One was not time-barred by the statute of limitations. We agree.

■ Under 18 U.S.C. § 3293, the statute of limitations for violations of 18 U.S.C. § 1344 is ten years. *See* 18 U.S.C. § 3293. "[S]tatute of limitations normally begin to run when the crime is complete." *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970) (quoting *Pendergast v. United States*, 317 U.S. 412, 418, 63 S.Ct. 268, 87 L.Ed. 368 (1943)). The government filed the indictment on December 4, 1996. Thus, the commission of the offense must have been committed on or after December 4, 1986. Najjor contends that the submission of the false documents to Home Federal, prior to December 2, 1986, were the acts putting bank at risk. He maintains that once he submitted the documents the scheme was complete.

■ We have held that a violation of 18 U.S.C. § 1344 is a continuing offense. *See United States v. Nash*, 115 F.3d 1431, 1441 (9th Cir.1997). The signing of the loan note was in furtherance of the scheme to defraud Home Federal. Here, Najjor signed the note payable to Home Federal on December 11, 1986. On December 4, 1996, the government charged Najjor with

executing a scheme to defraud Home Federal. The charge was brought within ten years of the date that Najjor signed the note. Thus, the district court correctly concluded that the indictment was returned within the limitations period and the government could prosecute Najjor for the entire scheme to defraud Home Federal.

C. Restitution

■ Najjor contends that the district court erred in calculating the restitution payable to Home Federal. Specifically, he contends that the district court failed to properly consider all the evidence in calculating the amount of restitution owed to Home Federal. "A restitution order is reviewed for abuse of discretion, provided that it is within the bounds of the statutory framework." *United States v. Lawrence,* 189 F.3d 838, 846 (9th Cir.1999). The factual findings underlying these orders are reviewed for clear error. *Id.* We conclude that the district court clearly erred when it failed to consider all the evidence prior to ordering restitution at $2.19 million.

■ Under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, restitution may be ordered only for "the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey v. United States,* 495 U.S. 411, 413, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). The district court has broad discretion to determine the type and amount of evidence required to support an award of restitution. *See United States v. Zink,* 107 F.3d 716, 718–19 (9th Cir.1997). However, "in determining the appropriate amount of restitution, the district court should not accept uncritically an amount recommended by the probation office." *United States v. Barany,* 884 F.2d 1255, 1261 (9th Cir.1989). The sentencing court is responsible for making an independent

determination as to the amount of loss the victim suffered as a result of the defendant's conduct. *Id* at 1260.

■ Prior to the sentencing hearing, the government produced a document showing the loan balance and foreclosure bid by Home Federal to get the property back. The probation department took the outstanding loan balance of $5.69 million and subtracted Home Federal's $3.5 million bid to take the property back, leaving a net loss of $2.19 million for restitution purposes. At the sentencing hearing, the district court adopted this figure based solely on the findings made by the probation department. When Najjor's counsel attempted to argue that the method used to reach the restitution amount was flawed, the judge responded:

> I'm willing to hear this issue just on the restitution, and I can set it for another hearing ... and we can have the Probation Office and you come in with what you believe should be the restitution order. I mean, there certainly is some restitution that is owed, and I picked that figure, because that's what the Probation Office suggested.

Thus, at the first sentencing hearing, the district court simply accepted the probation office's calculation and failed to independently assess the amount of loss to Home Federal. In fact, the court admitted that it "wasn't satisfied completely with the probation office's calculations" and had not had the time in the first hearing to consider all the figures presented to the court.

The court intended to further consider the restitution issue at the second hearing. At the second hearing, the court briefly heard Najjor's arguments as to why the restitution amount was incorrectly calculated. However, upon learning from the government that the court lacked jurisdiction to reconsider the sentence, the court

declined to further reconsider the restitution issue. Because the district court did not assess all the evidence prior to ordering restitution at $2.19 million, we remand for the district court to consider all the evidence pertaining to the restitution order and make an independent determination of the actual loss Home Federal suffered as a result of Najjor's conduct.

D. Calculation of Amount of Loss In Sentencing

Najjor contends that the district court erred in increasing his sentence eleven levels under United States Sentencing Guidelines ("U.S.S.G.") § 2F1.1 based on the court's determination that the loss to Home Federal was the full amount of the $5.4 million loan. The district court's factual findings used in sentencing, including the calculation of loss to the victims, are reviewed for clear error. *United States v. Blitz,* 151 F.3d 1002, 1009 (9th Cir.1998).

The district court calculated the base offense level at six under U.S.S.G. § 2F1.1(a) because the offense involved fraud or deceit. The district court then reviewed the evidence and found that Najjor did not intend to repay the loan to Home Federal. Thus, the court calculated the loss to Home Federal as the entire amount of the loan, or $5.4 million, that Najjor did not intend to repay. Based on this determination, the district court increased Najjor's offense level by eleven levels, the maximum as of November 15, 1988 for a loss that large. U.S.S.G. § 2F1.1(b)(1)(L) (1988) (stating that if the loss exceeded $5,000,000 the base offense level must be increased by eleven levels).

The sentencing range for fraud varies depending on the amount of loss. *See* U.S.S.G. § 2F1.1 (1988). Loss is defined as either the actual or the intended loss-whichever is greater. *See id.,* cmt. n.7. The amount of the loss need not be determined with precision. *See id.,* cmt.

n.8. The court need only make a reasonable estimate. *Id.* When the defendant has no intent to repay or otherwise make good on a loan, the loss is the gross value of the loan taken from the bank. *United States v. Galliano,* 977 F.2d 1350, 1352–53 (9th Cir.1992), *cert. denied,* 507 U.S. 966, 113 S.Ct. 1399, 122 L.Ed.2d 772 (1993).

Given the record, the district court's finding that Najjor did not intend to repay the loan is not clearly erroneous. Thus, the district judge did not err in determining Najjor's offense level based on the full amount of the fraudulently obtained loan. *See id.* Because this is not a case in which the defendant fraudulently obtained a loan without providing any security, the district court had the discretion to grant a downward departure based on the collateral pledged to secure the loan. *See United States v. Hutchison,* 22 F.3d 846, 855 (9th Cir.1993) (*abrogated on other grounds by United States v. Wells,* 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997)); *United States v. Shaw,* 3 F.3d 311, 314 (9th Cir.1993) ("The court may depart from [the intended loss] level if the circumstances warrant a departure ...."). However, the record demonstrates that the district court acknowledged its authority to grant a downward departure but, in its discretion, declined to do so. We have no jurisdiction to review a district court's discretionary denial of a downward departure request. *United States v. Lipman,* 133 F.3d 726, 729 (9th Cir.1998).

AFFIRMED IN PART, REVERSED IN PART. REMANDED FOR RECALCULATION OF THE AMOUNT OF RESTITUTION DUE.