UNITED STATES of America, Plaintiff–Appellee,

v.

Michael WINEMAN, Defendant–Appellant.

No. 01–50567.

D.C. No. CR–99–00188–MMM–07.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 2002.

Decided Feb. 28, 2003.

---

1. *See Gilbert v. City of Martinez,* 152 Cal. App.2d 374, 313 P.2d 139, 141 (Cal.App. 1957); *see also* 28 Am.Jur.2d, Estoppel and Waiver §§ 45, 51.

Before REINHARDT, O'SCANNLAIN and PAEZ, Circuit Judges.

MEMORANDUM *

Michael Wineman appeals his conviction on five counts of mail fraud and one count of telemarketing fraud arising from his employment at WRI Holdings ("WRIH"). Wineman challenges (1) the sufficiency of the evidence with respect to each of the verdicts; (2) the district court's instructions to the jury concerning the element of intent; (3) the admissibility of testimony by three victims with respect to whom Wineman was not charged; (4) the district court's denial of Wineman's request for a two-level minor role adjustment; (5) the district court's decision to impose a two-level upward departure for Wineman's violation of the Senior Citizens Against Marketing Scams ("SCAMS") Act; and (6) the district court's attribution to appellant, in calculating his base offense level, of more than $800,000 in losses, and the sufficiency of the evidence used to determine the amount of restitution owed. The facts and prior proceedings are known to the parties, and are restated herein only as necessary.

I

Wineman contends first that his conviction on Count One should be reversed because he spoke with the victim, Nick Pino, Jr., only after Mr. Pino had invested and, thus, at the time of his misrepresentations to Mr. Pino, "the crime, if any, was already committed." Appellant's Opening

Brief at 20. The record reveals, however, that Mr. Pino's second investment check was mailed at least three months after Wineman began work at WRIH. Thus, while Wineman did not speak with Mr. Pino until after the latter had mailed in his second and final check to WRIH—and although Mr. Pino was initially induced to invest by another WRIH employee—a rational jury could still find evidence sufficient to support a guilty verdict for Wineman. For it is clearly established that "as a knowing participant in a scheme to defraud," Wineman "is liable for his co-schemers' use of the mails or wires." *United States v. Blitz,* 151 F.3d 1002, 1006 (9th Cir.1998) (citation and internal quotation marks omitted).

■ Wineman's broader challenge to the sufficiency of the evidence with respect to all counts of mail fraud also must fail. Although the court instructed the jury that it must find that the defendant "made up a scheme or plan," the law of this circuit does not require such a showing. Rather, we have held that conviction for mail fraud requires " 'proof that the accused (1) participated in a scheme or artifice to defraud, and (2) caused the use of the mails (3) for the purpose of executing the scheme.' " *United States v. Carpenter,* 95 F.3d 773, 775 (9th Cir.1996) (quoting *United States v. Manarite,* 44 F.3d 1407, 1411 (9th Cir. 1995)). Thus, while there was no evidence introduced that Wineman "made up" the WRIH scheme, no such evidence was necessary to support a guilty verdict. *See United States v. Price,* 623 F.2d 587, 591 (9th Cir.1980) ("In order to sustain a conviction under the federal mail fraud statutes, it is not necessary that the defendant be the mastermind of the operation, but it is necessary to show willful participation in

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

a scheme with knowledge of its fraudulent nature and with intent that these illicit objectives be achieved."), *overruled on other grounds, United States v. De Bright,* 730 F.2d 1255 (9th Cir.1987). Here, sufficient evidence existed to demonstrate a statutory violation. That Wineman received a more favorable instruction than that to which he was entitled does not affect our conclusion. The error in the instruction worked, if at all, to Wineman's benefit. It did not "materially [adversely] affect[ ] the verdict." *United States v. Pierre,* 254 F.3d 872, 877 (9th Cir.2001).

## II

█ Wineman next challenges the district court's refusal to accept his suggested jury instruction. Wineman urged the court to include language—borrowed from the Second Circuit's decision in *United States v. Starr,* 816 F.2d 94 (2d Cir.1987)— requiring the jury to find that his deceptions were coupled with a contemplated harm to the victim and that they went to the nature of the bargain itself. *See id.* at 98. Wineman's proposed instruction, however, is inconsistent with Ninth Circuit law concerning the intent element of mail fraud. We have held that "[i]t is enough . . . that the government charge and the jury find either that the victim was actually deprived of money or property *or* that the defendant intended to defraud the victim of the same." *United States v. Utz,* 886 F.2d 1148, 1151 (9th Cir.1989) (citation omitted). Wineman's proposed instructions, therefore, sought to propose not a theory of the case—but rather a departure from established case law within this circuit.

Furthermore, the instructions as given did encompass Wineman's theory of the case, his assertions to the contrary notwithstanding. For, while Wineman contends that the instructions did not require

findings regarding his intent to do harm and the centrality of the intended harm to the nature of the bargain itself, the actual instructions belie his contentions: The court's fourth instruction required a finding that the defendant "acted with intent to defraud," while its third instruction required the jury to conclude that the defendant's "promises or statements were material."

## III

█ Wineman's third claim challenges the admission of the testimony of three victims of the WRIH scheme who were not among those Wineman was charged with defrauding. Wineman first asserts—as he did below—that their testimony was cumulative and unfairly prejudicial. The testimony of the three victims, however, was essential to establish an element of the offense set forth in count twenty of the indictment, namely Wineman's violation of the SCAMS Act. That act requires a showing that the defendant participated in a scheme that targeted ten or more persons over the age of fifty-five. 18 U.S.C. § 2326. The three witnesses whose testimony Wineman challenges—when added to the seven others charged in the indictment—satisfy this element of the offense. Wineman is surely correct to assert that the testimony of these three witnesses was prejudicial to him, but he offers no proof that the prejudice was unfair, let alone that the prejudice substantially outweighed the probative value of the evidence, as required by Federal Rule of Evidence 403.

Wineman also asserts, as he did *not* at trial, that the testimony of the three witnesses constitutes inadmissible "other acts" evidence under Federal Rule of Evidence 404(b). But we have clearly held that "[e]vidence should not be treated as other crimes evidence when the evidence

concerning the [other] act and the evidence concerning the crime charged are inextricably intertwined." *United States v. Soliman,* 813 F.2d 277, 279 (9th Cir. 1987) (citation and internal quotation marks omitted). The testimony of these three witnesses is more than "inextricably intertwined" with the crime charged—it is *of a piece* with the crime charged. The testimony, then, cannot be said to constitute impermissible "other acts" evidence and is therefore admissible. *See id.* ("[T]he policies underlying the rule are simply inapplicable when some offenses committed in a single criminal episode become other acts because the defendant is indicted for less than all of his actions.") (citation and internal quotation marks omitted).

## IV

Wineman's fourth and fifth claims challenge the district court's refusal, on the one hand, to grant a two-level, "minor role" decrease in his offense level and its decision, on the other hand, to impose a two-level upward departure for his violation of the SCAMS Act.

## A

■ Section 3B1.2(b) of the Sentencing Guidelines states that a defendant is entitled to a two-level decrease in his offense level "[i]f [he] was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). Wineman's assertion that he was less culpable than others in the scheme, however, "does not necessarily entitle [him] to a role adjustment." *United States v. Ladum,* 141 F.3d 1328, 1348 (9th Cir.1998). Rather, "[h]e must show that he was substantially less culpable than the average co-participant." *Id.* The district court in this case had sentenced a number of other participants in the WRIH scheme and, relying on that experience, noted that

those superior to Wineman had received two- to four-level upward adjustments, while those beneath him in the scheme had received two-level downward adjustments. The district court's careful weighing of Wineman's culpability relative to other members of the scheme, when viewed in light of our admonition that "role adjustments are to be used infrequently," *Ladum,* 141 F.3d at 1348 (citation omitted), compels the conclusion that the district court did not commit clear error in denying appellant a minor-role adjustment. *See United States v. Christman,* 894 F.2d 339, 341 (9th Cir.1990) (holding that "[a] district court's finding that a defendant does not qualify for minimal or minor participant status ... should be upheld unless clearly erroneous") (citations and internal quotation marks omitted).

## B

■ Nor did the district court err in imposing a two-level upward departure for Wineman's violation of the SCAMS Act. The court imposed the upward departure pursuant to section 5K2.0 of the Sentencing Guidelines, which authorizes a court to impose a sentence outside the applicable range when the court finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the ... guidelines." U.S.S.G. § 5K2.0. The district court relied upon section 5K2.0—rather than section 3A1.1(b), which provides for a two-level increase "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim"— because the latter provision did not become effective until November 1, 1998 and sentencing Wineman under its auspices would raise potential ex post facto problems.

The district court's reliance on section 5K2.0 was well placed. For, in *United*

*States v. Scrivener* we held that the SCAMS Act "manifests Congress' view that the Sentencing Guidelines do not adequately punish defendants who target the elderly, a particularly gullible class that Congress has separately attempted to protect." 189 F.3d 944, 952 (9th Cir.1999). In so doing, we upheld a district court's imposition of enhancements under *both* section 5K2.0 *and* section 3A1.1(b) in the case of a defendant who had targeted senior citizens as part of a telemarketing scheme.

Wineman seeks to evade *Scrivener's* holding by demonstrating that his victims were not particularly vulnerable, but his effort is unavailing. For *Scrivener* makes plain that such "particularized findings of vulnerability," *id.* at 952, while required for enhancements under section 3A1.1(b), are inapplicable for those made under section 5K2.0 because Congress has singled out senior citizens, *as a class,* for greater protection.

The district court's decision to impose the two-level upward departure, therefore, was not an abuse of discretion and must be affirmed. *See United States v. Sanchez–Rodriguez,* 161 F.3d 556, 559 (9th Cir. 1998) (holding that a district court's decision to depart should be reviewed for abuse of discretion because it embodies the traditional exercise of discretion by a district court).

## V

■ Finally, Wineman challenges the district court's reliance on the $1.1 million loss figure (as set forth in the presentence report (PSR)) in determining both his sentence and the amount of restitution owed. Wineman, however, did not object to the district court's reliance on the $1.1 million loss figure. Accordingly, he has forfeited this objection and we may consider it only if the district court committed plain error

in relying upon the loss figure. *See United States v. Olano,* 507 U.S. 725, 731–33, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Plain error exists only where there is "(1) error, (2) that was clear or obvious, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Vences,* 169 F.3d 611, 613 (9th Cir.1999).

The sentencing range for defendants convicted of fraud varies depending upon the amount of loss. *United States v. Najjor,* 255 F.3d 979, 985 (9th Cir.2001). "Loss is defined as either the actual or intended loss—whichever is greater." *Id.* There was ample evidence that the scheme in this case was intended to raise much more than the $1.1 million for which Wineman was sentenced and that Wineman himself was aware of that intent. Additionally, the commentary on section 2F1.1 of the Sentencing Guidelines makes clear that "the loss need not be determined with precision." U.S. SENTENCING GUIDELINES MANUAL § 2F1.1 cmt. n. 9. The court is required only to make "a reasonable estimate of the loss, given the available information." *Id.* Given that the district court's estimation of the loss was premised upon the losses reported by the actual victims of the WRIH scheme, and in light of the flexible approach advocated by the guidelines in calculating losses, it cannot be said that the district court committed error at all—let alone "plain error"—in relying on the $1.1 million loss figure.

The judgment of the district court, therefore, must be

**AFFIRMED.**