UNITED STATES of America,
Plaintiff—Appellee,

v.

Jonathan GORDON, Defendant—
Appellant.

United States of America,
Plaintiff—Appellee,

v.

Stephen M. GORDON, Defendant—
Appellant.

No. 03–50383, 03–50388.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 2004.

Decided Nov. 17, 2004.

USLA—Office of the U.S. Attorney, Criminal Division, Los Angeles, CA, for Plaintiff–Appellee.

**502**

United States Attorneys Office, Los Angeles, CA, William S. Harris, Esq., Stewart & Harris, South Pasadena, CA, for Defendant–Appellant.

Before: PREGERSON, TASHIMA, and PAEZ, Circuit Judges.

## MEMORANDUM *

In these consolidated appeals, Jonathan Gordon and Stephen Gordon[1] challenge their respective convictions and sentences for wire fraud involving deprivation of honest services, bank fraud, and false statements to a financial institution in connection with a check-kiting scheme. Stephen also appeals his conviction and sentence for conspiracy.

Jonathan argues that there was insufficient evidence to support his convictions. We review de novo the district court's denial of his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(a). *United States v. Naghani*, 361 F.3d 1255, 1261 (9th Cir.2004). Sufficient evidence supports the convictions if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the required elements of the offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard preserves the role of "the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

■ The government presented evidence to the jury that was more than adequate to support a rational finding of Jonathan's guilt. The evidence indicated that while Jonathan was the financial consultant on Stephen's accounts he received payments from Stephen totaling over $340,000. After Jonathan's manager questioned him about one such payment deposited into his Merrill Lynch account, Jonathan opened an account at another bank into which he began depositing Stephen's payments. Between October 17, 2000, and November 9, 2000, Jonathan signed 271 CMA declines,[2] recommending payment of checks totaling over $24 million despite having been told by his manager that checks were not to be circulated among accounts and that checking activity on the accounts had to be reduced. On November 16, 2000, he gave false and misleading information to U.S. Bank representatives and failed to inform his manager that he had received and responded to inquiries concerning Stephen's accounts.

Jonathan points to a number of alternative inferences that he asserts could be drawn from the evidence presented, but none of his proposed inferences undermines the validity of those drawn by the jury. *See United States v. Mares*, 940 F.2d 455, 458 (9th Cir.1991) ("The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. For ease of reference, Jonathan Gordon and Stephen Gordon are hereinafter referred to by their first names.

2. A "CMA decline" is an automatically-generated notice on a Capital Management Account that alerts a Merrill Lynch financial consultant that an outgoing check will be declined unless the notice is overridden by management.

whether the jury could reasonably arrive at its verdict.").

■ Stephen argues that his convictions should be reversed because the district court erroneously admitted expert testimony regarding check kiting. He contends that the testimony violated Federal Rule of Evidence 704(b) because it necessarily compelled a finding that he had the requisite mental state for the crimes of which he was convicted. *See United States v. Finley*, 301 F.3d 1000, 1014–15 (9th Cir. 2002).

We review the district court's decision to admit expert testimony for abuse of discretion. *United States v. Campos*, 217 F.3d 707, 710 (9th Cir.2000). A district court abuses its discretion by basing its decision on an erroneous interpretation of the law or a clearly erroneous interpretation of the facts. *Finley*, 301 F.3d at 1007. We reverse only if we have "a definite and firm conviction that the district court committed a clear error of judgment." *Id.* (quoting *United States v. Benavidez–Benavidez*, 217 F.3d 720, 723 (9th Cir.2000)).

Although it is a close question, we find no abuse of discretion here. Viewed in context, the challenged testimony did not compel a finding that Stephen had the requisite mental state to engage in check-kiting. The expert testified:

> Based on my analysis of the 20 bank accounts and detailed analysis of the account balances and the deposits and disbursements, there was a pattern of activity among these bank accounts consistent with a check-kiting scheme. The scheme was present in that it created the impression or illusion that there were funds on deposit in two or more accounts at the same time.

The expert did not comment on Stephen's mental state and conceded on cross examination that Stephen's proposed explanation for the checking activity would serve a legitimate business purpose and bear 90 percent of the characteristics of a check-kiting scheme. Because the described illusion of funds being on deposit in two or more accounts at the same time could exist without Stephen knowingly creating that illusion, this testimony did not necessarily compel the conclusion that Stephen had the requisite mental state to engage in check-kiting. Accordingly, the district court did not abuse its discretion in admitting the testimony.

■ The district court enhanced both Jonathan's and Stephen's sentences based on judicial findings made under the clear and convincing evidence or the preponderance of the evidence standard. These enhancements violated the rule that sentence enhancements can be based only on facts proven to a jury beyond a reasonable doubt, as announced in *United States v. Ameline*, 376 F.3d 967, 980 (9th Cir.2004). *See also Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Absent these questioned enhancements, the sentencing ranges would be substantially less. Jonathan, in fact, contends that he would have completed service of his sentence. Under these circumstances, we remand the two cases to the district court for reconsideration of the sentences in light of *United States v. Booker*, —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004), and *United States v. Fanfan*, —— U.S. ——, 125 S.Ct. 11,159 L.Ed.2d 838 (2004). *See United States v. Castro*, 382 F.3d 927, 929 (9th Cir.2004).

Finally, Stephen contests the amount of restitution he was ordered to pay, contending that it was based on an improper calculation of the amount of loss. We review the amount of a restitution award for abuse of discretion. *United States v. De-George*, 380 F.3d 1203, 1221 (9th Cir.

2004).[3] A review of the record demonstrates that the trial court carefully reviewed the relevant evidence and made an independent determination by clear and convincing evidence. Nothing in the record indicates that the court abused its discretion in arriving at the restitution amount. *See United States v. Najjor,* 255 F.3d 979, 984 (9th Cir.2001). We thus affirm the restitution award.

Jonathan's request for bail pending further proceedings is remanded to the district court for reconsideration in light of the changed circumstances regarding sentencing. Accordingly, the convictions are affirmed in each case and the "sentence[s are] REMANDED for such further proceedings as the district court deems appropriate under the circumstances." *Castro,* 382 F.3d at 929.

AFFIRMED and REMANDED.

**3.** *Blakely* does not affect a restitution order made, as in this case, under 18 U.S.C. § 3663A. *See DeGeorge,* 380 F.3d at 1221.