**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

ABDUL QAYYUM; CHRIS
MARIE WARREN, a/k/a Christie
Warren; HAROON RASHID;
SAIMA SAIMA; IRFAN
KAMRAN,

Defendants-Appellees.

No. 04-1509

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 03-CR-127-B)**

John W. Van Lonkhuyzen, United States Department of Justice, Criminal
Division, Washington, D.C., (David M. Gaouette, Assistant United States
Attorney, Denver Colorado; William J. Leone, United States Attorney, Denver,
Colorado; and Steven A. Tyrrell, United States Department of Justice, Criminal
Division, Washington, D.C., with him on the briefs), for Plaintiff-Appellant.

Raymond P. Moore, Federal Public Defender, Denver, Colorado, for Defendant-
Appellee Abdul Qayyum.

Jeffrey S. Pagliuca, Holland & Pagliuca, P.C., Denver, Colorado, for Defendant-
Appellee Haroon Rashid.

Thomas J. Hammond, Thomas J. Hammond, P.C., Denver, Colorado, filed a brief
for Defendant-Appellee Chris Marie Warren.

Marc Milavitz, Boulder, Colorado, filed a brief for Defendant-Appellee Saima Saima.

Donald R. Knight, Knight & Moses, Littleton, Colorado, filed a brief for Defendant-Appellee Irfan Kamran.

Before **HENRY**, **BALDOCK**, and **MURPHY**, Circuit Judges.

**HENRY**, Circuit Judge.

This case requires us to determine whether the district court, before trial, improperly dismissed one count of a multi-count indictment concerning the alleged immigration of an unlawful alien into the United States. The count at issue charges Abdul Qayyum, Chris Marie Warren, Haroon Rashid, Saima Saima, and Irfan Kamran ("the Defendants") with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. The indictment alleges the conspiracy's purpose was that "an otherwise inadmissible alien . . . fraudulently and unlawfully would enter and remain in the United States." The Defendants filed a motion to dismiss the § 371 conspiracy count. The district court granted the motion, concluding that the statute of limitations barred prosecution. The government now appeals dismissal of the count. We exercise jurisdiction under 18 U.S.C. § 3731 and reverse the pre-trial dismissal of the count.

# I. BACKGROUND

The Third Superceding Indictment charges the Defendants with (1) conspiracy to defraud the government by obstructing the regulation and control of the immigration of aliens into the United States, in violation of 18 U.S.C. § 371 (Count One); (2) making false statements to a government agent, in violation of 18 U.S.C. § 1001 (Counts Two through Six, charging the Defendants separately); and (3) conspiracy to harbor an illegal alien, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and (a)(1)(B)(i) (Count Eight). The indictment, returned on December 16, 2003, also charges Sajjad Nasser and Imran Khan with the conspiracy counts (Counts One and Eight) and charges Mr. Nasser with making a false statement (Count Seven). Mr. Nasser and Mr. Khan, however, did not move to dismiss Count One with the Defendants and are not parties to this appeal.

Only Count One of the Third Superceding Indictment is at issue here. The grand jury charges in Count One that from on or about March 4, 1996, until on or about March 21, 2003, the Defendants, Mr. Nasser, and Mr. Khan knowingly conspired "to defraud the United States by obstructing, interfering, impairing, impeding and defeating, through fraudulent and dishonest means, the legitimate functioning of the government, that is, the regulation and control of immigration of aliens into the United States." Aplt's App. at 187 ¶ 1. Count One further specifies that "[i]t was the purpose and object of the conspiracy that IMRAN KHAN, an otherwise inadmissible alien, with the assistance of [the Defendants

-3-

and Mr. Nasser], fraudulently and unlawfully would enter and remain in the United States." *Id.* ¶ 2.

Count One further charges the manner and means of the § 371 conspiracy:

a.      At various time[s] between on or about March 4, 1996, and on or about August 19, 1997, through fraudulent and deceptive means, including but not limited to the filing of false immigration documents, one or more of the defendants arranged for the entry of IMRAN KHAN, an illegal alien, into the United States.

b.      At various times between on or about August 19, 1997, and on or about March 21, 2003, one or more of the defendants provided IMRAN KHAN with housing and other forms of support in order to continue his unlawful presence in the United States.

c.      At various times on or about August 19, 1997, and on or about March 21, 2003, one or more of the defendants concealed from and/or falsely represented the true status of IMRAN KHAN in the United States in order to continue his unlawful presence in the United States.

*Id.* at 187-88 ¶ 3.

The count goes on to allege nine overt acts in furtherance of the § 371 conspiracy: (1) on or about March 4, 1996, Mr. Qayyum filed an immigrant visa petition falsely representing that Mr. Khan was his "child," knowing the information to be false; (2) on or about March 4, 1996, Ms. Warren filed an affidavit of support falsely representing that Mr. Khan was her stepson, knowing the information to be false; and (3) on or about August 19, 1997, Mr. Khan unlawfully entered the United States. *Id.* at 188 ¶ 4. The indictment further charges that between December 2002 and March 2003, (4) Mr. Qayyum, (5) Ms.

Saima, (6) Mr. Kamran, (7) Ms. Warren, (8) Mr. Rashid, and (9) Mr. Nasser individually and falsely stated to a federal agent that Mr. Khan was the biological son of Mr. Qayyum, when each knew the information to be false. *Id.* at 188-89 ¶ 4. The government maintains that Mr. Khan is the nephew–not the biological son–of Mr. Qayyum.

The Defendants moved to dismiss Count One as time barred by the five-year statute of limitations under 18 U.S.C. § 3282(a). The district court granted the Defendants' motion in an oral ruling:

> As elucidated in the overt acts alleged, the fraud charged was fraud allegedly committed to secure Imran Khan's entry into the United States. Once he was admitted to the United States on August the 19th, 1997, his status from an alien applicant, if you will, changed to one, I will assume, fraudulently obtained as being a legal alien immigrant, but there's nothing else to be done to secure the immigration into the United States. Once the fraud was complete by securing his entry into the United States, the crime was complete. That is more than five years from the completion of the offense, and the motion will be granted as to Count 1. Count 1 will be dismissed.

Aplt's App. at 322. The court later issued a written order reiterating that it had dismissed Count One "[f]or the reasons stated on the record during the November 2, 2004 hearing." *Id.* at 254 (Order, dated Nov. 4, 2004).

## II. DISCUSSION

Count One charges Defendants with a violation of 18 U.S.C. § 371, which is the federal general conspiracy statute prohibiting conspiracies "to defraud the

United States . . . in any manner or for any purpose." To prosecute the Defendants under § 371, the government must prove "(1) an agreement; (2) to break the law; (3) an overt act; (4) the purpose of which is to further the object of the conspiracy; and (5) that the defendant entered the conspiracy willfully." *United States v. Davis*, 965 F.2d 804, 811-12 (10th Cir. 1992). The prosecution is subject to a five-year statute of limitations. *See* 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.").

"To satisfy the statute of limitations, the prosecution must show that the conspiracy continued to exist five years prior to the indictment . . . and that 'at least one overt act in furtherance of the conspiratorial agreement was performed within that period.'" *United States v. Hauck*, 980 F.2d 611, 613 (10th Cir. 1992) (quoting *Grunewald v. United States*, 353 U.S. 391, 397 (1957)). "The fact that the conspiracy began outside the limitations period will not prevent prosecution as long as at least one overt act in furtherance of the conspiracy occurred within five years of the indictment." *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1398 (4th Cir. 1993). The First Superceding Indictment, issued on May 22, 2003, first charged the Defendants with § 371 conspiracy. "The filing of an indictment tolls the limitations period for the charges contained

in the indictment," and a superceding indictment relates back to the original indictment's date if the superceding indictment "does not broaden or substantially amend the original charges." *United States v. Zvi*, 168 F.3d 49, 54 (2d Cir. 1999) (internal quotation marks omitted). Count One of the Third Superceding Indictment therefore survives if the government establishes that the conspiracy existed on May 22, 1998, and at least one overt act in furtherance of the conspiracy was performed after that date.

"We review de novo the district court's legal conclusion concerning the scope of the conspiracy," *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001), and the court's dismissal of the count on statute-of-limitations grounds, *United States v. Reitmeyer*, 356 F.3d 1313, 1316 (10th Cir. 2004). *See also United Med. & Surgical Supply Corp.*, 989 F.2d at 1398 (explaining that in a defendant's pre-trial motion to dismiss an indictment as time barred, a court reviews de novo "whether those facts [alleged in the indictment] demonstrate a failure timely to prosecute their case").

Before we can determine whether the statute of limitations bars prosecution, we must first understand the scope of the § 371 conspiracy alleged in Count One. "To determine the scope of the alleged conspiratorial agreement, the court is bound by the language of the indictment." *Hitt*, 249 F.3d at 1015. "We test the indictment solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Reitmeyer*, 356 F.3d at 1316-17

(internal quotation marks omitted).

The Supreme Court analyzed the statute of limitations in a conspiracy prosecution in *Grunewald*. There, three petitioners fraudulently obtained "no prosecution" rulings from the Bureau of Internal Revenue for two businesses' tax evasion cases. 353 U.S. at 395. After the petitioners' favorable rulings in 1948 and 1949, they acted to conceal "the irregularities in the disposition of the [two tax] cases." *Id.* An indictment, returned on October 25, 1954, charged the petitioners with § 371 conspiracy to defraud the United States to obtain "no prosecution" rulings. "The indictment further charged that part of the conspiracy was an agreement to conceal the acts of the conspirators." *Id.* at 394. After a jury convicted the petitioners, they challenged their conviction, arguing that the statute of limitations barred their prosecution.

In *Grunewald*, the applicable three-year statute of limitations barred prosecution unless (1) the conspiracy still existed on October 25, 1951, and (2) the petitioners performed an overt act in furtherance of the conspiracy after that date. *Id.* at 396. Based on the record, the Court concluded that prosecution was barred because no direct evidence established the conspirators originally agreed to conceal the crime after its commission. *Id.* at 404-06. Therefore, acts of concealment after the "no prosecution" rulings could not be considered overt acts in furtherance of the conspiracy.

"[T]he crucial question in determining whether the statute of limitations has

run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." *Id.* at 397. The Court rejected the notion that "the duration of a conspiracy can be indefinitely lengthened merely because the conspiracy is kept a secret . . . to avoid detection and punishment after the central criminal purpose has been accomplished." *Id.* at 405. If courts allowed "a conspiracy to conceal to be inferred or implied from mere overt acts of concealment," such a practice "would extend the life of a conspiracy indefinitely." *Id.* at 402. The Court made it clear, however, that acts of concealment can sometimes further a criminal conspiracy. "[A] vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." *Id.* at 405. In some conspiracies, "the successful accomplishment of the crime necessitates concealment." *Id.*

Here, the government maintains that the grand jury has alleged a continuing conspiracy, and the 2002-03 overt acts charged in Count One support the conspiracy's objective that Mr. Khan fraudulently "remain in the United States." According to the Defendants, Count One's charging paragraph limits the scope of the conspiracy to Mr. Khan's fraudulent entry into the United States. They contend that the overt acts alleged within the five-year limitations period are

merely "false denials of the original criminal act under questioning by law enforcement." Aple. Qayyum's Br. at 13. The Defendants maintain that while Count One vaguely alleges that they supported and concealed Mr. Khan to maintain his status in the United States, the indictment does not charge any specific acts to support these allegations. *See* Aplt's App. at 187 ¶ 3(b).

Assuming (as we must) at this stage of the proceedings that the indictment's allegations are true, *see Reitmeyer*, 356 F.3d at 1316-17, Count One on its face indicates that the statute of limitations does not bar prosecution. The count charges that the "purpose and object of the conspiracy" was for the Defendants to fraudulently assist Mr. Khan to "enter *and remain in* the United States." *Id*. at 187 ¶ 2 (emphasis added). The 2002-03 overt acts charged in the indictment further the Defendants' alleged objective to help Mr. Khan "remain in" the country, and these alleged acts clearly fall within the statute of limitations. Given the grand jury's express description of the conspiracy's purpose and object, the alleged false statements to government agents "formed part of the [charged] conspiracy because they did not *follow* the accomplishment of its central criminal objectives but rather were acts in *furtherance* of those aims." *United States v. Walker*, 653 F.2d 1343, 1348 (9th Cir. 1981); *see also United States v. Kissel*, 218 U.S. 601, 607 (1910) (describing how a conspiracy continues "when the plot contemplates bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up").

The plain language of Count One convinces us that the grand jury charged a continuing conspiracy in which "the successful accomplishment of the crime necessitates concealment." *Grunewald*, 353 U.S. at 405. The possible ambiguity in Count One stems not from the clear description of the "purpose and object of the conspiracy," Aplt's App. at 187 ¶ 2, but rather from the language in the count's opening paragraph that the Defendants conspired to defraud "the regulation and control of immigration of aliens into the United States," *id.* ¶ 1. We decline to adopt the position of the district court and the Defendants that, based on the count's first paragraph, the conspirators necessarily achieved the only purpose of the conspiracy when Mr. Khan gained entry into the country.

Count One is therefore distinguished from the decisions cited by Defendants, where courts concluded that a conspiracy terminated following the completion of the *only* objective alleged in the indictment. Defendants first rely on *United States v. Davis*, 533 F.2d 921 (5th Cir. 1976). In *Davis*, two men formed a business consortium and submitted a fraudulent contract proposal to the United States Department of Labor ("the Department") to train 450 unemployed people to be dry-cleaning employees. *Id.* at 924-26. They falsely stated in their proposal that nineteen consortium members had agreed to train the workers. The defendants were charged with § 371 conspiracy, and "the sole object of the conspiracy as charged was to make false statements and representations to the Department." *Id.* at 927. The defendants had made the false statements in the

-11-

proposal more than five years before the return of the indictment. The five-year statute of limitations therefore barred prosecution because the charged conspiracy "had run its course with the submission of the false statements to the Department . . . , and the subsequent issuance of the contract by the Department in reliance on the falsifications was not for purposes of the statute of limitations an overt act in furtherance of the conspiracy." *Id.* at 928.

Count One is also unlike the charged conspiracy in *United States v. Roshko*, 969 F.2d 1 (2d Cir. 1992). There, the government alleged that Meir Roshko (1) entered into a sham marriage with a United States citizen to obtain a green card, (2) divorced that wife after receiving the green card, and (3) later married Irene Roshko, who eventually obtained permanent resident status. *Id.* at 2. The indictment charged that the Roshkos had conspired to defraud the government "by seeking changes in the immigration status of [Mr. Roshko] based on a sham marriage to a United States citizen." *Id.* at 3. Relying on the plain language of the indictment, the circuit rejected the government's view that the conspiracy also included as its objective Ms. Roshko's later "acquisition of permanent resident status." *Id.* at 7. The "singular objective, as alleged in the indictment, was achieved and the conspiracy terminated . . . when the INS approved Meir's application for a green card." *Id.* at 7-8. The Second Circuit subsequently dismissed the count as time barred because Mr. Roshko's acquisition of the green card was more than five years before the grand jury returned its indictment.

The charged conspiracies in *Davis* and *Roshko* are narrower than Count One. Neither *Davis* nor *Roshko* charged a continuing conspiracy, and those agreements terminated, upon the completion of their sole objectives, outside of the relevant statute of limitations. In contrast, Count One alleges that the Defendants conspired to help Mr. Khan enter and remain in the United States, and the count charges overt acts in furtherance of the conspiracy (such as the false statements) within the five-year limitations period.

In sum, the district court improperly dismissed Count One in light of the plain language describing the conspiracy's scope and our responsibility at this stage of the proceedings to take the count's allegations as true. On remand, a factfinder must determine after hearing the evidence whether the alleged false statements from 2002 and 2003 were (1) only acts of concealment after accomplishing the Defendants' sole objective to bring Mr. Khan into the United States, or (2) were part of an ongoing conspiracy in which the "plot contemplate[d] bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up." *Kissel*, 218 U.S. at 607; *see also United States v. Cannistraro*, 800 F. Supp. 30, 78 (D.N.J. 1992) ("The ultimate question of whether acts are in furtherance of the conspiracy or only for purposes of concealment depends on the objectives of the conspiracy, a determination of which is a question of fact for the jury.").

On remand, the government can only obtain a conviction by proving that

-13-

the Defendants' conspiracy existed on May 22, 1998 and originally included an agreement to help Mr. Khan "remain in the United States." *See Grunewald*, 353 U.S. at 404 (rejecting the government's contention of a continuing conspiracy because "[t]here is not a shred of direct evidence in this record to show anything like an express original agreement among the conspirators to continue to act in concert in order to cover up, for their own self-protection, traces of the crime after its commission"). For the purposes of our review, though, it is irrelevant whether the government could eventually succeed at trial or should have charged a narrower conspiracy.

## III. CONCLUSION

Accordingly, we REVERSE the district court's dismissal of Count One.