FILED
United States Court of Appeals
Tenth Circuit

December 15, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

LARRY W. WILLIAMS,

      Defendant - Appellant.

No. 09-3087

(D. Kansas)

(D.C. No. 6:08-CR-10199-1-WEB-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

On September 16, 2008, Larry W. Williams was charged with one count of

wire fraud, in violation of 18 U.S.C. § 1343. More specifically, the Indictment

charged Mr. Williams with using his position at Molded Fiber Glass Construction

Company ("MFGCC") to fraudulently manipulate MFGCC's payroll records to

inflate the amount of money owed to him, and he then caused funds to be

transferred electronically from MFGCC into several bank accounts owned by him.

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

The Indictment alleged Mr. Williams thereby illegally obtained the sum of $719,529.32.

Mr. Williams pled guilty on January 15, 2009, and was sentenced to thirty-three months' imprisonment and assessed restitution in the amount of $744,529.32. Mr. Williams appeals the amount of restitution ordered, arguing that two errors made the restitution amount larger than it should be. Because we agree with Mr. Williams as to one of the errors, we reverse the order of restitution and remand this matter to the district court to enter a correct restitution amount in accordance with this opinion.

**BACKGROUND**

As indicated above, Mr. Williams pled guilty to one count of wire fraud. He filed a Petition to Enter Plea of Guilty, in which he admitted that he "transmitted or caused to be transmitted, via electronic wire fund transfer the approximate sum of $719,529.32 from the payroll account of MFGCC to an account owned by me, in violation of Title 18, United States Code, § 1343." Petition at 1-2, R. Vol. I at 8-9. Mr. Williams' Plea Agreement contained the following factual recitation of the basis for his guilty plea:

> Beginning in August of 1999 and continuing through July 26, 2006, in the District of Kansas, Larry Williams was the controller of Molded Fiber Glass Construction Company (MFGCC). While in this position Larry Williams was responsible for maintaining the payroll records of MFGCC. While serving in this capacity, Larry Williams

inflated the amount of money owed to him by his employer and caused electronic fund transfers from the payroll account of MFGCC into one of several bank accounts owned by Larry Williams. The government claims, but the defendant does not admit, that the total amount of loss suffered by MFGCC is $ 719,529.32. The defendant will object to claims based upon the statute of limitations in addition to factual reasons why he is not liable for certain claims.

Plea Agreement at ¶ 2, R. Vol. 1 at 16.

In preparation for sentencing under the United States Sentencing Commission, Guidelines Manual ("USSG"), the United States Probation Office prepared a presentence report ("PSR"). The PSR stated that the amount of restitution should be $744,529.32, which was based upon a statement from MFGCC's insurance carrier that it had paid a claim in that amount. See PSR at ¶¶ 83-86, R. Vol. II at 17. Mr. Williams objected to the PSR restitution calculation, since that loss amount was different from that identified ($719,529.32) in the Indictment, the Petition to Enter Plea of Guilty and the Plea Agreement, and because he claimed it included amounts which should be excluded. More particularly, Mr. Williams argued that restitution in the amount of $719,529.32 was unlawful because $129,728.78 of that loss was barred by the statute of limitations since it represented losses attributable to conduct occurring prior to August of 2003. He further argued that the losses identified as relating to the MFG Trust Fund, in the amount of $5,208.29, and the CITI account, in the amount of $13,300, should be excluded from the restitution order because he had no knowledge of either one of those accounts.

At Mr. Williams' sentencing hearing, the district court announced its intention to enter a restitution order against Mr. Williams in the sum of $744,329.32, although the court noted Mr. Williams' objections to that amount. The government conceded that it did not have any evidence to present in support of the losses to the MFG and the CITI accounts (totaling $18,508.29), nor any evidence explaining the difference between the loss identified in the PSR and the loss identified in the Indictment, Petition to Enter Guilty Plea and the Plea Agreement.[1]

Mr. Williams reiterated his objection, based on the statute of limitations, to including any losses occurring prior to August of 2003 (i.e., $129,728.78). The district court found that the statute of limitations did not bar a restitution order for the pre-August 2003 losses and overruled Mr. Williams' objection regarding the MFG Trust Fund and the CITI accounts. The court subsequently ordered Mr. Williams to pay restitution in the sum of $744,529.32. This appeal followed.

As indicated above, Mr. Williams makes two arguments in support of his claim that the district court erred in assessing restitution at $744,329.32: (1) the

[1]The record in this case is, quite frankly, somewhat confusing as to how certain monetary figures were derived. And while the government's concession referred to in text is not nearly as clearly stated in the record of the sentencing hearing, we take comfort from the government's statement in its brief that, at the sentencing hearing, "[t]he government announced that it did not have any evidence to present in support of the losses to the MFG Trust Fund and the CITI accounts, $18,508.29, nor upon the difference between the loss identified in the PSR and the Indictment, Petition to Enter Guilty Plea and Plea Agreement." Appellee's Br. at 3.

government presented no evidence regarding the difference between the loss identified in the PSR and the loss identified in the pleadings, nor in support of the losses to the MFG Trust Fund or the CITI account; and (2) the statute of limitations bars holding Mr. Williams responsible for $129,728.78 of the total loss. We agree with the first argument and disagree with the second.

## DISCUSSION

"Generally, we review the district court's application of the Mandatory Victims Restitution Act *de novo*, review its factual findings for clear error and review the amount of restitution awarded for abuse of discretion." United States v. James, 564 F.3d 1237, 1242 (10th Cir. 2009) (quoting United States v. Gallant, 537 F.3d 1202, 1247 (10th Cir. 2008) (footnote omitted)).

### I. MFG Trust Fund/CITI Account:

This issue is easily resolved, as the government agrees that the claimed losses relating to the MFG Trust Fund and the CITI account should not have been included in the restitution order, because the government failed to present any evidence of such losses. Furthermore, the government also agrees that the district court erred in including in the restitution order the difference between the amount stated in the pleadings ($719,529.32) and the amount stated in the PSR and adopted by the district court ($744,529.32). With that error corrected, we leave it

to the district court to make a precise calculation of the restitution award. We remind the court, however, that "[a] restitution order must be based on actual loss, which the government bears the burden of proving." United States v. Parker, 553 F.3d 1309, 1323 (10th Cir. 2009). And although a district court may accept any undisputed portion of a defendant's PSR as a finding of fact, United States v. Robertson, 568 F.3d 1203, 1214 (10th Cir. 2009), it may not do so for disputed portions of the PSR. United States v. Orr, 567 F.3d 610, 615 (10th Cir. 2009) (holding that the district court may not rely on facts alleged in the PSR, if the government's evidence does not support those allegations). We now turn to whether any part of that total amount should be excluded on statute of limitations grounds.

## II. Statute of Limitations:

The Indictment in this case was filed in September 2008. Under 18 U.S.C. § 3282(a), a five-year statute of limitations applies. Accordingly, Mr. Williams argues that any restitution for activities occurring before August of 2003 is barred by the statute of limitations. The district court rejected this argument, holding that the "Indictment charged the defendant with engaging in wire transmissions as part of a scheme to defraud . . . [and that] when the defendant is convicted of a crime in which a scheme is an element, the court under Section 3663A must order the defendant to pay restitution for all losses the victims suffered as a direct result

-6-

of the scheme, even if the losses were caused by conduct outside the statute of limitations." Mem. & Order at 2, R. Vol. 1 at 24 (citing United States v. Dickerson, 370 F.3d 1330 (11th Cir. 2004)). We agree with the district court for the reasons it provided. See United States v. Valladares, 544 F.3d 1257, 1269 (11th Cir. 2008) ("[T]his Court [has] interpreted the statutory definition of 'victim' in § 3663A(a)(2) with respect to the crime of wire fraud and held that the district court 'must . . . order the defendant to pay restitution to all victims for the losses they suffered from the defendant's conduct in the course of the scheme, even where such losses were caused by conduct outside the statute of limitations.") (quoting United States v. Dickerson, 370 F.3d 1330, 1342 (11th Cir. 2004)).

Additionally, however, we conclude that Mr. Williams' pre-August 2003 conduct may not be outside the statute of limitations. In his Petition to Enter Plea of Guilty and in his Plea Agreement, Mr. Williams admitted that "[b]eginning in August of 1999 and continuing through July 26, 2006," he "devised a scheme" to defraud his employer. See Petition to Enter Plea at 1, R. Vol. 1 at 8 (emphasis added). By his own admission, Mr. Williams' scheme was ongoing, and "the statute of limitations is no bar if there is an ongoing scheme continuing into the five year period." United States v. Jensen, 608 F.2d 1349, 1355 (10th Cir. 1979).

Mr. Williams argues we should examine individual discreet transactions to determine whether any of the loss is time-barred, citing United States v.

-7-

Reitmeyer, 356 F.3d 1313 (10th Cir. 2004), in support thereof. Reitmeyer is, as the government points out, distinguishable from Mr. Williams' situation. Reitmeyer involved the Major Fraud Act, 18 U.S.C. § 1031(a)(1). That Act "prescribes fines and imprisonment under certain circumstances for '[w]hoever knowingly executes, or attempts to execute, any scheme or artifice with the intent-(1) to defraud the United States; or (2) to obtain money or property by means of false or fraudulent pretenses, representations, or promises.'" Reitmeyer, 356 F.3d at 1317 (quoting 18 U.S.C. § 1031(a)). Accordingly, "[u]nder the plain language of the Act, an offense is each knowing 'execut[ion]' or 'attempt[ed] execu[tion]' of a scheme of artifice to defraud." Id. The Act thus focuses on "executions" of a scheme. See id. ("the Act contemplates prosecution of multiple counts when there are multiple 'executions' of a single scheme.").

The Wire Fraud statute at issue in this case, by contrast, focuses on the scheme itself, and not individual executions of that scheme. Thus, Mr. Williams admitted to devising a scheme, pursuant to which he defrauded his employer of money during the period of time covering August of 1999 until he was caught in July of 2006. Mr. Williams' offense was a continuing offense, whereas "the 'execution' of a scheme under the Major Fraud Act is not a 'continuing offense' for statute of limitations purposes." Id. at 1322. We therefore hold that the district court properly concluded that Mr. Williams perpetrated a single fraudulent scheme upon his employer and that he must pay restitution for all losses suffered

by MFGCC.  Because we found error in the precise calculation of the restitution amount, we remand this matter to the district court to ascertain and impose a corrected restitution amount.

## CONCLUSION

For the foregoing reasons, we REVERSE and REMAND for further proceedings consistent herewith.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge