**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAIME HOYOS,

     Petitioner-Appellant,

v.

RONALD DAVIS, Warden, California
State Prison at San Quentin,

     Respondent-Appellee.

No. 17-99009

D.C. No.
3:09-cv-00388-L-NLS

MEMORANDUM*

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted March 23, 2022
Pasadena, California

Before: IKUTA, CHRISTEN, and BUMATAY, Circuit Judges.

  Jaime Hoyos appeals the district court's denial of his 28 U.S.C. § 2254

habeas corpus petition in which he sought relief from his state-court convictions

and death sentence. Hoyos raises several certified claims on appeal. We address

---

  * This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

all but his *Batson* claim here.[1]  We have jurisdiction pursuant to 28 U.S.C. §§ 1291

and 2253, and we affirm the district court's denial of Hoyos's habeas petition.

We review de novo a district court's denial of a federal habeas petition.

*Kipp v. Davis*, 971 F.3d 939, 948 (9th Cir. 2020).  Pursuant to the Antiterrorism

and Effective Death Penalty Act of 1996 (AEDPA), we defer to the last state-court

decision on the merits of any claim unless that decision was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States," or was "based on an

unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  *Staten v. Davis*, 962 F.3d 487, 494 (9th Cir. 2020)

(quoting 28 U.S.C. § 2254(d)).  Here, we review the California Supreme Court's

ruling on direct appeal.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).[2]

1.  Hoyos raises multiple claims regarding jailhouse informant George

Jimenez, who made statements to law enforcement regarding co-defendant Jorge

Emilio Alvarado's participation in the Magoon murders.  First, Hoyos argues that

---

[1]  *See Batson v. Kentucky*, 476 U.S. 79 (1986).  We address Hoyos's *Batson* claim in a concurrently filed published opinion.  Hoyos also included three uncertified claims in his opening brief as an application to expand the Certificate of Appealability (COA).  *See* Fed. R. App. P. 22(b)(2); Ninth Cir. R. 22-1(e).  We decline to grant a COA as to those three claims.

[2]  Because the parties are familiar with the facts, we recite only those necessary to decide the appeal.

2

his constitutional rights to due process, to testify, and to receive a fair trial were violated when the trial court denied his motion to sever his trial from Alvarado's trial, and that the California Supreme Court's rejection of this claim was an unreasonable application of United States Supreme Court precedent. Jimenez's statements did not directly implicate Hoyos, but Hoyos claims the statements impacted his right to testify because he and his co-defendant made a joint decision whether to testify: "It was either both or none." The California Supreme Court concluded Hoyos's arguments lacked merit because the trial court ruled the Jimenez statements were only admissible if Alvarado testified and nothing in the statements precluded Hoyos from testifying. *See People v. Hoyos*, 162 P.3d 528, 547 (Cal. 2007).

"[T]here is no clearly established federal law requiring severance of criminal trials in state court," *Runningeagle v. Ryan*, 686 F.3d 758, 774 (9th Cir. 2012), and Hoyos does not identify any clearly established Supreme Court precedent supporting his position that the California Supreme Court violated his constitutional rights. Even assuming that the California Supreme Court erred, Hoyos has not demonstrated that any error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). Therefore, we affirm the district court's denial of this claim.

Second, Hoyos argues the prosecution's delayed disclosure of the Weil Report deprived him of his due process rights in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Hoyos contends the California Supreme Court's decision refuting this claim was an unreasonable determination of the facts in light of an "undisputed record." According to Hoyos, the record is unequivocal that neither Hoyos nor Alvarado testified "because of Alvarado's direct vulnerability to impeachment by the Jimenez statements," and he argues that both defendants would have testified if the Weil Report had been timely disclosed because it was significant impeachment evidence. The district court concluded the California Supreme Court's determination was not unreasonable because it was not certain that Hoyos actually would have testified if he had received the Weil Report and because Hoyos failed to show how his testimony would have changed the outcome at trial.

To succeed on his *Brady* claim, Hoyos was required to establish that: (1) the withheld evidence was favorable to him "because it is exculpatory, or because it is impeaching"; (2) the evidence was "suppressed by the State, either willfully or inadvertently"; and (3) he was prejudiced as a result. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). A *Brady* claim is not meritorious "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence

4

would have produced a different verdict." *Id.* at 281; *see also United States v. Bagley*, 473 U.S. 667, 682 (1985). Hoyos's argument focuses on the prejudice prong, but he does not explain how his testimony would have changed the outcome at trial, and it was not unreasonable for the California Supreme Court to decide that the impact of the Weil Report on Hoyos's decision to testify was "highly speculative," *Hoyos*, 162 P.3d at 565, given both the nature of the report and Hoyos's trial counsel's statements regarding what Hoyos's testimony would have been. Whether Hoyos would have testified is even more doubtful given his repeated insistence that he would not have testified unless his co-defendant testified, and it is speculative whether earlier disclosure of the Weil Report would have caused Alvarado to testify. Accordingly, we affirm the district court's decision that the California Supreme Court's decision was not based on an unreasonable determination of the facts.[3]

Third, Hoyos contends he was denied his right to effective assistance of counsel by the delayed disclosure of the Weil Report because his trial counsel were "deficient in their efforts to affirmatively investigate and impeach informant Jimenez." The district court concluded that Hoyos likely failed to exhaust this

---

[3] Hoyos also argues the alleged *Brady* violation resulted in a violation of his right to testify, but for the same reasons his right-to-testify claim related to his severance claim fails, it fails under the *Brady* theory as well.

claim because he did not raise it in the state courts.[4]  The district court said it considered the claim de novo pursuant to 28 U.S.C. § 2254(b)(2), yet it ultimately concluded that the California Supreme Court's rejection of the claim "was neither contrary to, nor an unreasonable application of, *Strickland*."  On appeal, Hoyos does not address how this claim was properly exhausted.

We exercise our discretion to reach the merits of his unexhausted claim.  *See Gatlin v. Madding*, 189 F.3d 882, 889 (9th Cir. 1999) (acknowledging that pursuant to § 2254(b)(2) a court may deny a habeas petition by reaching the merits of unexhausted claims, but explaining it is not required to do so); *Runningeagle*, 686 F.3d at 777 n.10 (same); *cf. Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc) ("We may affirm on any ground supported by the record, even if it differs from the rationale used by the district court.").  To establish that his counsel's conduct rose to the level of a constitutional deprivation, Hoyos was required to show that: (1) counsel's performance was deficient; and (2) the

---

[4]  On direct appeal, Hoyos argued the late disclosure of the Weil Report "was prejudicial because it violated his right to receive meaningful guidance" from counsel about his decisions to testify.  *Hoyos*, 162 P.3d at 565.  The California Supreme Court explained that Hoyos did "not argue that his trial counsel [were] deficient because he failed to uncover the Jimenez impeachment evidence," so, unlike the claim he raises here, in the state court there was "no issue of trial counsel's not becoming aware of relevant evidence through counsel's failure to conduct a reasonable investigation."  *Id.*

6

deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). As to the first prong, Hoyos does not explain how his counsel could have been aware of the possibility of undisclosed evidence, and, in doing so, he conflates his ineffective assistance of counsel claim with his *Brady* claim. As for prejudice, Hoyos shows neither that disclosure of the Weil Report would have caused him to testify nor how his testimony would have changed the outcome at trial. Instead, he asserts in a conclusory manner that had he "testified that he did not kill the Magoons, and if the defense had confronted the blood splatter evidence and other forensic evidence, there is a strong probability the outcome of the trial would have been very different." At oral argument before our court, Hoyos's counsel admitted that defense counsel used experts to cross-examine the state's blood splatter expert at trial. We are not persuaded that Hoyos has established prejudice. *Cf. Gentry v. Sinclair*, 705 F.3d 884, 906 (9th Cir. 2013) ("Because we have held that none of the impeachment evidence argued in support of [the defendant's] *Brady* claim is material, that analysis is dispositive of the prejudice prong of an ineffective assistance claim based on the same evidence."). Even on de novo review, we affirm the district court's denial of this claim because it fails under both prongs of *Strickland*.

2.  Next, Hoyos raises several claims regarding evidence of third-party culpability related to the Luna brothers.  He argues: (1) his counsel's failure to adequately investigate the Luna brothers amounted to ineffective assistance of counsel, (2) the prosecution's failure to provide information regarding the Luna brothers amounted to a *Brady* violation, and (3) these failures combined to infringe on his right to testify.

We agree with the district court that Hoyos's ineffective assistance of counsel claim regarding the Luna brothers fails.[5]  First, Hoyos's trial counsel attempted to gather further information about David Luna but was unable to do so.  Second, even assuming Hoyos could establish that counsel were deficient, we agree with the district court that Hoyos has not shown prejudice.  "Evidence of third-party culpability is not admissible 'if it simply affords a possible ground of suspicion against [another] person; rather, *it must be coupled with substantial evidence tending to directly connect that person with the actual commission of the offense.*'"  *People of Territory of Guam v. Ignacio*, 10 F.3d 608, 615 (9th Cir. 1993) (quoting *Perry v. Rushen*, 713 F.2d 1447, 1449 (9th Cir. 1983)).  At most,

---

[5]  Hoyos raised the ineffective assistance of counsel claim in his second state habeas petition, and the California Supreme Court denied it both on the merits and as procedurally barred.  The district court reviewed the merits of the ineffective assistance of counsel claim de novo.

8

Hoyos shows that third parties may have had motive and opportunity to kill the Magoons, but he does not provide any substantial evidence connecting a third party to the murders.

As for the *Brady* claim concerning disclosure of information regarding the Luna brothers, the district court concluded Hoyos "fail[ed] to demonstrate that David Luna's identifying information was itself either exculpatory or material." But even assuming the prosecutor's failure to disclose satisfied *Brady*'s suppression prong, Hoyos's claim fails because he does not demonstrate prejudice for the same reasons he fails to demonstrate prejudice on his ineffective assistance of counsel claim.[6]

Hoyos's related right-to-testify claim fails because it is premised on his *Brady* and ineffective assistance of counsel claims. Accordingly, we affirm the district court's denial of Hoyos's habeas petition based on his claims related to the Luna brothers.

---

[6] Hoyos also claims his state appellate counsel were ineffective for failing to raise a third-party culpability claim in Hoyos's first state habeas petition. The district court concluded "such an argument fails to find support in clearly established law." Post-conviction "counsel acts as the petitioner's agent . . . and the petitioner must bear the risk of attorney error because there is no constitutional right to counsel in state [post-conviction] proceedings." *Detrich v. Ryan*, 740 F.3d 1237, 1243–44 (9th Cir. 2013) (en banc) (internal quotation marks omitted) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)), *cert. denied*, 572 U.S. 1146 (2014). We affirm the district court's denial of this claim.

3. Hoyos also contends his trial counsel were ineffective because they failed to investigate and present other substantial exculpatory and impeaching evidence during the guilt phase. In particular, Hoyos argues trial counsel's defense was: (1) inconsistent with the version of events that Hoyos offered; and (2) "predicated entirely on the putative existence of a sudden quarrel and shootout with Dan Magoon, without any comparable or complementary defense as to the murder of Mary Magoon." Hoyos also challenges the efficacy of trial counsel's blood splatter investigation. The district court denied this ineffective assistance of counsel claim, ruling that the California Supreme Court "could have reasonably rejected [the claim] based on [Hoyos's] failure to satisfy *Strickland*'s performance prong" and based on Hoyos's "failure to demonstrate prejudice."

First, we agree with the district court that Hoyos has failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," as is necessary to demonstrate that counsel's performance was constitutionally deficient. *Strickland*, 466 U.S. at 689. As the district court observed, counsel's decision to "assert self-defense or manslaughter for the murder of Daniel Magoon and second degree murder for Mary Magoon" was "clearly tactical" and "within the scope of 'reasonable professional

assistance.'"[7]  As the district court noted, while "the evidence of Daniel Magoon's propensity for violence was substantial, . . . the evidence concerning Mary was largely based on Hoyos's speculative statement that she might have been going for a gun that evening."  Trial counsel attempted to introduce evidence of Mary Magoon's familiarity with weapons, without success.  *Hoyos*, 162 P.3d at 558.  And any evidence that Mary Magoon had neglected her children, beyond the evidence of cocaine in her system that was presented to the jury, was too speculative and conclusory to support a propensity argument against her.

Hoyos also argues that trial counsel erred in failing to elicit, from the Magoons' seven-year-old son, that he knew Hoyos as a friend of his father and that Hoyos had not gone to his house on the night of the shootings.  As the district court noted, the record shows that the Magoons' son stated during interviews, and testified at trial, that he was asleep during the murders.  We affirm the district

---

[7] Hoyos contends that trial counsel should have presented evidence that Mary was involved in her husband's drug business, was familiar with the use of firearms, and was a chronic drug user.  Counsel did attempt to introduce some such evidence but decided to present evidence focused on Daniel's propensity for violence, and we agree with the district court that this was a reasonable strategic decision.  Further, the district court assumed, without deciding, that the trial court's reservations about the introduction of evidence concerning Mary's propensity for violence "amounted to an express ruling excluding that evidence," but that Hoyos failed to demonstrate an abuse of discretion.  We agree with the district court, and we decline to reach Hoyos's uncertified claim challenging the exclusion of certain evidence concerning Mary.

court's judgment that the failure to question the Magoons' son about this inconsistency, given his age and traumatic experiences, "might be considered sound trial strategy."

As for the blood splatter evidence, Hoyos alleges trial counsel were deficient because they did not elicit evidence like that of retired law enforcement officer George Crawford. But as the district court noted, Crawford's declaration was not part of the record in Hoyos's state court proceedings, so we cannot consider it. *See Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011) (precluding a federal habeas court's consideration of new evidence when reviewing a state court's decision pursuant to 28 U.S.C. § 2254(d)). Moreover, the trial record shows that Hoyos's counsel rebutted the prosecution's blood splatter and DNA experts through "extensive" cross-examination and the use of their own experts, namely experts in criminalistics and DNA analysis. Without sufficient evidentiary support demonstrating how counsel's response to the State's blood splatter evidence was deficient and not strategic, Hoyos's claim is no more than speculative. *See Runningeagle*, 825 F.3d at 984; *see also Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.").

Second, Hoyos has not demonstrated that the outcome of trial would have been different but for counsel's alleged deficiencies. As for evidence regarding Mary, the jury learned that Mary, like Dan, used cocaine, and the toxicology reports showed that Mary had almost four times as much active cocaine in her blood as her husband at the time of her death, *see Hoyos*, 162 P.3d at 540. But the jury also learned that Mary was shot while holding her three-year-old son, "and then finished off with a bullet to the back of her head." *Id.* at 558. Hoyos fails to demonstrate that additional evidence would have overcome the evidence regarding the circumstances of Mary's murder, and he thus fails to establish prejudice. As for the blood splatter evidence, Hoyos cannot demonstrate prejudice because "[s]peculation about what an expert could have said is not enough to establish prejudice." *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). There was substantial evidence supporting the jury's first-degree murder verdicts and Hoyos has not overcome his burden to show that counsel's alleged errors were prejudicial.

4. Hoyos next argues counsel were ineffective for failing to adequately investigate his life history and mental impairments and thereby failing to present sufficient mitigating evidence during the penalty phase. *Strickland* established the standard for ineffective assistance of counsel claims regarding counsel's

13

investigation into potential mitigating evidence: "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on the investigation." 466 U.S. at 690–91. Consequently, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691.

We agree with the district court that Hoyos did not show that defense counsel's investigations—and any decision not to investigate further—fell below an objectively reasonable standard. As part of its investigation, Hoyos's defense team made several trips to Mexico to interview members of Hoyos's family, retained a psychologist to evaluate Hoyos, and consulted with a social anthropologist who studied torture in Mexico. As the district court observed, counsel "made a strategic decision to focus on sympathy and avoid introducing character testimony to keep evidence of [Hoyos's] prior criminal activity away from the jury." Counsel decided that Hoyos's family members would testify during the penalty phase not about "what a great person Mr. Hoyos has been in the past, but how much they would miss him in the future were he to die." This decision was strategic because counsel wanted to avoid "open[ing] the door to any

14

character impeachment or rebuttal," to shield the jury from hearing evidence of Hoyos's prior convictions in Mexico for robbery, theft, forgery, and drug-trafficking. Counsel's decisions were reasonable in light of their sentencing strategy. *Cf. Wiggins v. Smith*, 539 U.S. 510, 527 (2003) ("[A] reviewing court must consider the reasonableness of the investigation said to support [counsel's] strategy.").

Moreover, Hoyos cannot establish prejudice because he fails to demonstrate that the additional mitigating evidence would have overcome the substantial aggravating evidence, even if counsel adopted the strategy that Hoyos now urges was required. The California Supreme Court was not unreasonable in concluding otherwise.

5. Last, Hoyos briefly argues his death sentence violates *Atkins v. Virginia*, 536 U.S. 304 (2002), because he "suffers from serious mental disabilities of a neuropsychological nature that are the functionally [sic] equivalent of mental retardation with respect to diminishing culpability."[8] *Atkins* held that executions of intellectually disabled individuals are cruel and unusual punishments prohibited by

---

[8] While courts "formerly employed the phrase 'mentally retarded,' we now 'us[e] the term 'intellectual disability' to describe the identical phenomenon." *Brumfield v. Cain*, 576 U.S. 305, 308 n.1 (2015) (alteration in original) (quoting *Hall v. Florida*, 572 U.S. 701, 704 (2014)).

the Eighth Amendment. *Id.* at 321. Hoyos concedes that evidence in the record as to his disability "may not be identical to th[at] in *Atkins*," but nonetheless urges us to remand for a hearing on the issue. Hoyos has not demonstrated how the California Supreme Court's denial of this claim violated clearly established federal law or was based on an unreasonable determination of the facts, and he does not explain what new evidence would be unearthed at an evidentiary hearing. Accordingly, we affirm the district court's denial of this claim.

**AFFIRMED.**